UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGOSOM HAILE,<br><br>                                    Petitioner,<br><br>v.<br><br>SIXTO MARRERO, in his official capacity as Warden of Imperial Regional Adult Detention Facility, et al.,<br><br>                                    Respondents. | Case No.:  3:26-cv-00944-RBM-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 2]** |

Before the Court are Petitioner Angosom Haile's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") (Doc. 1) and Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") (Doc. 2).  For the reasons below, the Petition is **GRANTED** and the TRO Motion is **DENIED as moot**.

## I.     BACKGROUND

Petitioner is a citizen of Eritrea who entered the United States on or about April 5, 2023.  (Doc. 1 ¶¶ 24, 26.)[1]  He was immediately apprehended by the Department of Homeland Security ("DHS") and initially processed under the Immigration and Nationality Act's ("INA") expedited removal procedures.  (*Id.* ¶¶ 26–27.)  After Petitioner received a

---

[1]  The Court cites the paragraph numbers of the Petition and the CM/ECF electronic pagination for other filings unless otherwise noted.

1

positive credible fear determination, DHS vacated his expedited removal order and placed him into full removal proceedings under INA § 240. (*Id.* ¶ 28.) DHS then "released Petitioner from immigration custody and permitted him to enter the United States pending adjudication of his removal case." (*Id.* ¶ 29.) Since then, Petitioner has "complied with all conditions imposed upon him." (*Id.*) On February 7, 2026, Immigration and Customs Enforcement ("ICE") re-detained Petitioner and placed him back into immigration custody. (*Id.* ¶ 31.) He is currently detained at Imperial Regional Adult Detention Facility. (*Id.*)

On February 13, 2026, Petitioner filed the Petition (Doc. 1) and TRO Motion (Doc. 2). The Court issued an Order to Show Cause and set a briefing schedule shortly thereafter. (Doc. 3.) On February 23, 2026, Respondents filed their Response to Petition ("Response"). (Doc. 4.) Petitioner was authorized to file a reply on or before February 27, 2026 (Doc. 3), but did not file one.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   DISCUSSION

Petitioner claims that his detention violates the INA, the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act. (Doc. 1 ¶¶ 33–61.) Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) "because Petitioner was present in the Untied States without being admitted or paroled." (Doc. 4 at 2 (citations omitted).) Respondents also "acknowledge[ ] that [c]ourts in this District have

2

repeatedly reached the opposite conclusion," and "that this District's prior decisions would control the result here if the Court adheres to its prior decision[s], as the facts are not materially distinguishable." (*Id.* at 2–3 (citations omitted).) For the reasons below, the Court finds that Petitioner is detained under 8 U.S.C § 1226 and entitled to immediate release.

Petitioner was apprehended upon his arrival in the United States in April 2023 and was soon thereafter released by DHS into the interior of the country; since then, he has "complied with all conditions imposed upon him." (Doc. 1 ¶ 29.) The Court "has previously held that where a petitioner is apprehended at the border, paroled into the country, and had been residing in the country when he was re-detained, his detention is governed by § 1226." *Ayinder v. LaRose*, Case No.: 26-cv-0566-JES-MSB, 2026 WL 296658, at *1 (S.D. Cal. Feb. 4, 2026) (collecting cases). *See also Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [Immigration and Naturalization Service] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).") Accordingly, the Court finds that Petitioner's detention is governed by § 1226.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

3:26-cv-00944-RBM-MMP

The Court has granted several habeas petitions filed by similarly situated petitioners. For example, in *Faizyan v. Casey*, the Court applied the *Mathews* test and found that the respondents' summary revocation of the petitioner's "conditional parole without an opportunity to be heard deprived [him] of his due process rights."  Case No.: 3:25-cv-02884-BM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025); *accord C.A.R.V. v. Wofford*, Case No. 1:25-CV-01395, JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where the petitioner was originally released on an order of release on own recognizance).  Here, like in *Faizyan*, Petitioner was released by DHS after being apprehended and lived in the United States for over two years before being re-detained.  (Doc. 1 ¶ 28.)  The Court thus adopts its reasoning in *Faizyan* and applies it here.  For those same reasons, ICE's re-detention of Petitioner without providing him a pre-deprivation hearing violates his due process rights and renders his detention unlawful.

The Court thus concludes that due process requires Petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained.  To the extent Respondents argue that Petitioner is entitled only to a bond hearing, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid."  *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

## IV.    **CONCLUSION**

For the reasons above, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

4

3:26-cv-00944-RBM-MMP

1. Respondents are **ORDERED** to immediately release Petitioner from custody under the same conditions of release that existed immediately prior to his February 7, 2026 re-detention.

2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner shall receive notice of the reasons for his re-detention and a hearing before an immigration judge to determine whether detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[2] that Petitioner poses a danger to the community or a risk of flight.

3. The TRO Motion (Doc. 2) is **DENIED as moot**.

   **IT IS SO ORDERED**.

DATE:  March 3, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2]  *See Sadeqi v. LaRose*, — F. Supp. 3d —, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281 (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond")).

5

3:26-cv-00944-RBM-MMP